# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| Catherine P. Morales,<br><br>        Plaintiff,<br><br>v.<br><br>Randolph Place Residences Condominium Association and Infocus Builders, Inc.<br><br>        Defendants. | Civil Action No.<br><br>Judge:<br><br>Magistrate Judge:<br><br>*Jury Trial Demanded* |

## COMPLAINT

Plaintiff Catherine P. Morales brings claims against Defendants Randolph Place Residences Condominium Association ("Condo Owners") and Infocus Builders, Inc. ("InFocus") and respectfully alleges as follows:

## INTRODUCTION

1. While entering the Randolph Place building for an open house, the automatic door to the building's lobby suddenly closed without warning, striking the Plaintiff, who was seventy-one years old at the time, causing her to fall into the wall and then to the floor. The impact fractured her vertebra, causing her undergo months of treatment, and endure a great deal of pain and disruption to her active and busy life.

2. There is video of the incident that would shed some light on the true nature of this accident and Plaintiff, through her counsel, has requested the video or any other information from the Condo Owners, the Builder, and their respective insurance companies. So far, they have

{10664589: }

**EXHIBIT A**

refused to provide the video or any other evidence related to the incident, to justify their denial of liability for the incident. Thus, forcing Morales to bring this suit.

3. From the information that Morales does possess, the door was either improperly maintained by the Condo Owners or it was improperly installed by Infocus otherwise it would not have closed with enough force and or speed to knock Catherine down. Either way, the Condo Owners have a duty to invitees to ensure they are safe from foreseeable injuries and to maintain premises in reasonably safe conditions. More specifically, the Owners had a duty to provide a safe means of ingress or egress to the premises for their invitees. Likewise, InFocus had a duty to exercise reasonable care in the installation of the entrances of Randolph Place for the safety of invitees. Either or both of the Defendants failed to do so, causing an innocent senior citizen, who was merely trying to visit an open house while on vacation, to fracture her vertebra and endure months of pain and treatments.

## PARTIES

4. Plaintiff Catherine P. Morales is an individual that is a citizen of the State of Texas and the United States of America.

5. Defendant Randolph Place Residences Condominium Association is a non-profit corporation organized under the laws of the State of Illinois. Randolph Place has its principal place of business in the State of Illinois and may be served with process by serving its registered agent, KSN Registered Agent, LLC at 175 N. Archer Avenue, Mundelein, IL 60060.

6. Defendant Infocus Builders, Inc. is a corporation that is incorporated under the laws of the State of Illinois. Infocus has its principal place of business in the State of Illinois and may be served with process by serving its registered agent, Robert J. Seivers at 5648 N. Magnolia Ave., Chicago, IL 60660.

## JURISDICTION AND VENUE

7. Jurisdiction is proper in this Court under 28 U.S.C. § 1332(a)(1) because Plaintiff and Defendants are citizens of different U.S. states, and the amount in controversy exceeds $75,000, excluding interest and costs. Plaintiff is a citizen of the State of Texas and both Defendants are citizens of the State of Illinois.

8. Venue is proper in this Court under 28 U.S.C. § 1391(b)(1) & (2) because the events giving rise to Ms. Morales's claims happened within this district and both Defendants reside in this district.

## FACTUAL ALLEGATIONS

### A. About Catherine

9. Plaintiff Catherine P. Morales is very highly educated and successful businesswoman. She holds a bachelor's degree in English Literature from the University of Missouri-Saint Louis, masters in English and an MS in Information Science from Texas Tech University and UCLA, respectively, as well as a MBA from Northwestern University – Kellogg School of Management. She is currently the Chair of the Board of Directors for Science & Medicine Group (formerly known as BioInformatics) and was a Vice President at Citibank, Chase Manhattan, and American Management Systems (later known as CGI). She was also a Senior Vice President and General Manager for LexisNexis - Government and Academic Markets and Executive Vice President and General Manager for Deltek.

10. Catherine lives in Georgetown, Texas and before the accident, had a very active work and social life. She walked between five to ten miles a day, swam several times a week, worked out in the gym and saw a personal trainer once a week. She participated in Tai Chi twice a week as well as general calisthenics for an hour every day. She prepared all her meals and did

all her cleaning and gardening herself. She generally shopped two to three times a week and attended social get togethers or ate out at restaurants about twice a week. She took classes and led bi-monthly book club discussions as well as hosted dinner parties on a weekly basis. During the covid pandemic, she attended weekly board meetings by Zoom and served as a councillor for the city of Georgetown. Catherine travelled extensively, usually taking one plane trip a month, and weekly trips by car.

### B. The Accident

11. In the summer of 2021, from June 22nd through the 28th, Catherine travelled to Chicago to visit David Smith and Li-Hua Yu, a couple that she met in 2016 and was friends with in Georgetown. Smith and Yu own a condo in central Chicago and go there to escape the Texas summer heat. On Sunday, June 27th, the group decided to take advantage of the traditional Chicago Sunday open houses and look at some nearby buildings. The group eventually ended up at Randolph Place at 165 N. Canal Street. As the group approached the building, they saw that main lobby doors were blocked off and shut. They entered through an exterior door which led into a small hallway that led to a single interior door. All foot traffic had to enter and exit from the same single interior door to access the reception area, because construction or remodelling was being done in the lobby. There was no security present outside of the building or beyond the exterior door, which was not locked.

12. The entrance was very busy with people coming and going and there was a line to get through the door. According to David Smith, who was behind Catherine in the line to go through the interior door, Catherine was not distracted as she moved towards the interior door. All of a sudden, without warning, the door quickly swung close. Smith attempted to grab the door before it hit Catherine, but was unsuccessful and the door struck Catherine on her left side. The

weight and speed with which the door closed knocked her into the wall to the right, striking her head, then the right side of her body and her back. She then fell to the floor on her back. Li-Hua Yu described the incident as "the door attacked her".

### C. The Immediate Aftermath

13. Catherine sat on the floor for several minutes in a daze. The fall was so brutal that Catherine's Apple Watch started buzzing with a fall alert and automatically began to call 911. She was visibly shaken and upset and could not pick herself up from the floor. A young man in his twenties and a female security guard that had come out to investigate helped Catherine to her feet. She was able to stand with some difficulty but was visibly walking in pain. She made it to the condo they were seeing in Randolph Place, but as the group was leaving, Catherine started to develop severe muscle pains, a severe headache, and her back and entire core began to ache severely. The pain steadily increased and the group quickly called a taxi and returned to Smith and Yu's apartment. The group had planned on dining out that evening and the following day but ended up cancelling their reservations because of Catherine's condition. She was unable to sit or stand without help and unable to sleep. On a scale of 1-10, her pain level was about 7.

14. In severe discomfort, Catherine flew home to Texas the following day. She was in such pain that other travellers had to lift her bag onto the TSA conveyor belt and into and out of the overhead bin on the plane. It was excruciating for her to sit for more than three hours on the flight home to Austin. She had to arrange for friends to pick her up at the airport and drive her car because she could not do so herself. By the time she arrived home, Catherine had severe pain in her lower right abdomen and back at level of nine on a one-to-ten scale. That pain increased to ten whenever she attempted to lie down, turn, or get out of bed, an excruciating procedure that would take up to ten minutes.

15.     The following day, June 29th, Catherine saw her general practitioner who determined after x-rays and an MRI, that Catherine had a broken L3 vertebra. Just trying to lie down and get up from the MRI machine caused Catherine to scream in pain for the first time in 40 years. She was at a constant pain level of 8 but with movement, her pain level would go up to a ten. Because it was impossible for her to get in and out of bed, she started sleeping in a chair for the one to two hours of rest she was actually able to get each night. The next week, she was unable to work, was in constant pain and spent all day applying lidocaine patches, ice packs, and attempting to rest. To Catherine, the pain was relentless and unceasing; she could not remember ever experiencing such physical anguish.

**D. Surgery and Physical Therapy**

16.     On July 8th, Catherine had back surgery where bone cement was injected into the fractured vertebra by inserting a needle through an incision in her skin and into the bone itself. She returned home and there was no immediate change in her pain level or condition. Any motion involving her core was almost impossible. She was unable to attend a council meeting and was still unable to sleep.

17.     For the next two weeks, the pain decreased ever so slightly, except when engaging her core. She still had to sleep in a chair, have others shop for her and was unable to work. She was unable to sit in a chair for longer than twenty minutes and could only stand for ten minutes at the most. On July 15th, she unsuccessfully attempted to sleep in bed but could not lay down, get up, or move in the bed without extreme pain.

18.     By July 20th, Catherine was finally able to sleep in her bed but was still in pain whenever she moved. She was also now able to walk short distances, up to half a mile.

19. On July 27th, Catherine had her physical therapy ("PT") evaluation but had to leave after only twenty minutes from exhaustion and pain. She was assigned exercises to do at home on a daily basis and was scheduled to have PT twice a week. She attempted to do the daily home exercises but was unable to finish them on most occasions.

20. By August, Catherine was trying to walk increasing distances but rarely lasted more than twenty minutes and never exceeded more than one mile at a time. She was still unable to sit for more than twenty minutes and had to lean over the counter or perch on a kitchen stool while eating. In September, her PT sessions were reduced to once a week and she was still experiencing stamina issues that would cause her to end the session early. By this point, Catherine was able to increase her walking distance to one and a half miles, but this required three different sessions with many breaks. She was finally able to attend council meetings but because she was still unable to sit, she had to pace behind the dais. Her pain had decreased to where it was intermittent, usually being triggered after PT or towards the end of the day.

21. Today, over a year later, Catherine still has moderate to severe pain in the right side of her back near her spine. Her back is frequently tight, stiff, and painful. She receives massage therapy to relieve the pain every two weeks, does stretching exercises, and sees a therapist once a week to regain her core strength. She has not fully regained the strength or agility she possessed prior to the accident when she was able to walk seven to ten miles a day. Currently, she is only capable of three to five miles and would say her condition is at a level of 75% of what it is was prior to the accident.

## COUNT ONE
**Premises Liability (State Law)**
(Against Randolph Place Residences Condominium Association)

22. Ms. Morales incorporates and re-alleges the above allegations in full.

23. That on or about June 27, 2021, and for a long time prior and subsequent thereto, the Defendant, Randolph Place Residence Condominium Association, a not-for-profit corporation, owned, operated, maintained, and controlled the condo building commonly known as "Randolph Place" located on the premises at or near 165 N Canal St, Chicago, State of Illinois.

24. That on or about June 27, 2021, and a long time prior and subsequent thereto, Randolph Place, owned, operated, maintained, and controlled the entrances to the lobby and/or reception area within the premises of the condo building.

25. That in the course of said operation, Randolph Place's premises were open to the general public in the State of Illinois, and that in the course of said operation, Randolph Place invited and/or permitted and allowed the public including the Plaintiff to enter onto and upon said premises, specifically for open houses or condo showings.

26. That on or about said date, Ms. Morales, pursuant to said invitation, was lawfully walking through the entrance to said lobby and/or reception area of said premises as a guest of Randolph Place.

27. That at all times material herein Ms. Morales was in the exercise of ordinary care and caution for her own safety.

28. That it then and there became and was the duty of Randolph Place to exercise reasonable care in the ownership, operation, control, care and maintenance of the entrances of said premises and/or surrounding area for the safety of those persons, including the Plaintiff, therein.

29. That the Condo Owners could reasonably expect that guests of Randolph Place would not discover or realize the danger or would fail to protect themselves against it.

30. That at said time and place, Randolph Place, notwithstanding their duty aforesaid, were guilty of one or more of the following negligent and careless acts and/or omissions:

a. Permitted and allowed said entrance to create a hazardous and dangerous condition by permitting said entrance to close improperly without warning and/or with too much force or speed when they knew or in the exercise of ordinary care should have known said condition of said entrance constituted an unreasonable danger to safety and welfare of those persons lawfully located on said premises, including Ms. Morales;

b. Failed to inspect an unsafe and hazardous condition, including but not limited to the entrance, for an unreasonably long period of time when they knew or in the exercise of ordinary care should have known that the entrance constituted an unreasonable danger to safety and welfare of those persons lawfully located on said premises, including Ms. Morales;

c. Failed to maintain and or repair an unsafe and hazardous condition, including but not limited to the entrance, for an unreasonably long period of time when they knew or in the exercise of ordinary care should have known that the entrance constituted an unreasonable danger to safety and welfare of those persons lawfully located on said premises, including Ms. Morales; and or

d. Failed to warn of an unsafe and hazardous condition, including but not limited to the entrance, for an unreasonably long period of time when they knew or in the exercise of ordinary care should have known that the entrance constituted an unreasonable danger to safety and welfare of those persons lawfully located on said premises, including Ms. Morales.

31. That the Defendant Condo Owners' negligence was a proximate cause of Ms. Morales suffering a fractured vertebra, causing severe pain and suffering as well as the cost of her medical treatment, including surgery to inject cement in the fractured vertebra and months of physical therapy.

## COUNT TWO
### Negligence
(Against InFocus Builders)

32. Ms. Morales incorporates and re-alleges the above allegations in full.

33. At all relevant times Defendant InFocus Builders was a corporation organized and existing under Illinois law and having its principal office and place of business in Chicago, Cook County, Illinois. Defendant by its agents and employees operate a commercial and residential construction company.

34. At all relevant times InFocus was a contractor who, on behalf of Defendant Condo Owners, erected or installed the inner door to the lobby/reception area of the building known as Randolph Place.

35. That in the course of said installation of the inner lobby door, InFocus was aware that Randolph Place's premises were open to the general public in the State of Illinois, and that in the course of said operation, Randolph Place invited and/or permitted and allowed the public including the Plaintiff to enter onto and upon said premises, specifically for open houses or condo showings.

36. That on or about said date, Ms. Morales, pursuant to said invitation, was lawfully walking through the entrance to said lobby and/or reception area of said premises as a guest of Randolph Place when she was, without warning, struck by the automatic door installed by InFocus causing her to stumble, strike her head on the wall, and fall to the floor.

37. That at all times material herein Ms. Morales was in the exercise of ordinary care and caution for her own safety.

38. That it was the duty of InFocus to exercise reasonable care in the installation of the entrances of said premises and/or surrounding area for the safety of those persons, including the Plaintiff, therein.

39. That at said time and place, InFocus, notwithstanding their duty aforesaid, caused the injury to Ms. Morales through the following negligent and careless act and/or omission:

   a. Permitted and allowed said entrance to create a hazardous and dangerous condition by permitting said entrance to close improperly without warning and/or with too much force or speed when they knew or in the exercise of ordinary care should have known said condition of said entrance constituted an unreasonable danger to safety and welfare of those persons lawfully located on said premises, including Ms. Morales.

40. That Infocus's negligence was a proximate cause of Ms. Morales suffering a fractured vertebra, causing severe pain and suffering as well as the cost of her medical treatment, including surgery to inject cement in the fractured vertebra and months of physical therapy.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in her favor and against each of the Defendants, and award the following relief:

   a. Compensatory and consequential damages, including damages for emotional distress, humiliation, loss of enjoyment of life, and other pain and suffering on all claims allowed by law in an amount to be determined at trial;

    b.    Compensation for economic losses on all claims allowed by law in an amount to be proven at trial;

    c.    Pre- and post-judgment interest at the lawful rate; and

    d.    Any other relief that the Court deems just and proper.

Respectfully submitted,

Dated: September 21, 2022

/s/ Jacob D. Radecki

McDONALD HOPKINS LLC
Jacob D. Radecki (#6321345 IL)
300 North LaSalle Street – Suite 1400
Chicago, Illinois 60654
Tel.: (312) 642-2282
jradecki@mcdonaldhopkins.com

REID COLLINS & TSAI LLP
Sean D. Johnson *(pro hac vice forthcoming)*
1301 S. Capital of Texas Hwy
Building C, Suite 300
Austin, Texas 78746
Tel.: 512.647.6100
sjohnson@reidcollins.com

*Counsel to Plaintiff Catherine P. Morales*

## JURY DEMAND

Ms. Morales hereby requests a jury trial in this matter.

Respectfully submitted,

Dated: September 21, 2022

/s/ Jacob D. Radecki

McDONALD HOPKINS LLC
Jacob D. Radecki (#6321345 IL)
300 North LaSalle Street – Suite 1400
Chicago, Illinois 60654
Tel.: (312) 642-2282
jradecki@mcdonaldhopkins.com

REID COLLINS & TSAI LLP
Sean D. Johnson *(pro hac vice forthcoming)*
1301 S. Capital of Texas Hwy
Building C, Suite 300
Austin, Texas 78746
Tel.: 512.647.6100
sjohnson@reidcollins.com

*Counsel to Plaintiff Catherine P. Morales*